Jason **KELLER**, Plaintiff,

v.

Larry **MacCUBBIN**, et al., Defendants.

C.A. No. 11C–03–015 (RBY).

Superior Court of Delaware, Kent County.

Submitted: Nov. 29, 2012.
Decided: Jan. 3, 2013.

Thomas C. Crumplar, Esq., Jacobs & Crumplar, P.A., Wilmington, Delaware, for Plaintiff.

Roger D. Landon, Esq., and Kelley M. Huff, Esq. Murphy & Landon, Wilmington, Delaware, for Defendants.

## OPINION

YOUNG, J.

### ISSUE AND STANDARD

■ This is Defendants' Motion to preclude Plaintiff's use of the testimony of Dr. Carol A. Tavani, M.D., D.A.B.P. & N., a psychiatrist, as to her opinion of the time of on-set of Plaintiff's repression of any memory of certain events. While this is Defendants' Motion, the Plaintiff, as proponent of the proffered expert testimony bears the burden of establishing the admissibility by a preponderance of the evidence.[1] That admissibility must satisfy the requirements of *Daubert* and its progeny.[2]

A hearing, with testimony, upon this Motion was held on November 29, 2012. This is the Court's decision thereon.

### FACTUAL BACKGROUND

For purposes of this *Daubert* hearing, Plaintiff at fourteen years of age was, essentially, a waif. He had apparently been supporting himself, at his young age, on the streets of Rehoboth Delaware, by way of "non-traditional" employment endeavors, which local authorities believed included burglaries.

At some point in the summer of 1988, Plaintiff and Defendant crossed-paths. Defendant became aware of Plaintiff's circumstances, leading to Defendant's "taking in" Plaintiff for feeding and temporary housing. During the course of a period of multiple days, it is now alleged, Defendant,

in both Rehoboth and Washington D.C., engaged in more than one act of sexual abuse of Plaintiff. At a time while Plaintiff was still staying with Defendant, Plaintiff departed Defendant's shop. As he was walking on the boardwalk, Plaintiff observed two Rehoboth police officers coming towards him. Plaintiff is said to have recognized immediately that he was in a precarious situation, assuming (quite correctly, as it turned out) that those officers were actively trying to locate and apprehend Plaintiff. The dreaded confrontation occurred. Plaintiff was taken into custody. He was specifically, though perhaps perfunctorily, questioned by the arresting officers as to whether or not he had ever been subjected to sexual abuse. Later, during the progression of his moving through the juvenile incarceration process, he was interviewed by a child psychologist. In the course of that interview, which was considerably more thorough, he was questioned at some length about any history of having been subjected to sexual abuse. In both instances, Plaintiff categorically denied any such experience.

It is the position of the Plaintiff that, as of the time of those interviews, his memory of the events with Defendant had become the subject of dissociative amnesia or repressed memory or traumatic amnesia— all used interchangeably. Further, Plaintiff asserts that the memory remained unrecovered by Plaintiff until more than 20 years had elapsed. At that time, Plaintiff was being given a massage, which became "aggressive", so to speak. Plaintiff, by his description, "freaked out." As a result, he began seeing a psychologist. During the course of that treatment, his memory of past events was evoked, yielding a descrip-

---

**1.** *Minner v. American Mortg. & Guar., Co.,* 791 A.2d 826 (Del.Super.2000) with multiple citations of p. 843.

**2.** *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

tion of the alleged sexual abuse by Defendant.

For the purposes of this consideration only, we are to presume that the alleged abuse took place, and that at some point, it ceased to be within the scope of Plaintiff's recall. Evidence as to its actually having occurred, and evidence of whether the recall of it was "repressed" (which would, from the time of its commencement until the time of its re-emergence in the memory, toll the running of any applicable statute of limitations) or whether it was "forgotten" or "blocked" or "suppressed" (none of which would toll the statute's running) are all left for another day.

### DISCUSSION

■ The question for consideration is whether or not Plaintiff's expert, Dr. Carol Tavani, is to be permitted to offer to the jury the opinion that Plaintiff's loss of memory of the events he alleges took place at some specific time frame in 1988. As indicated, according to the allegations concerning the circumstances, the alleged events took place in the summertime period. On that basis, the Plaintiff must have sustained traumatically produced repressed memory of the event sometime during that period in 1988 in order to be able to present his case at this time, free of any statute of limitations bar.

Plaintiff has offered Dr. Tavani as a witness to provide evidence, through her expert opinion, that the repression occurred within two years of the event. Because of Plaintiff's prior testimony, this witness' opinion is offered on the basis of scientific probabilities without any corroborating evidence as to timing. To be clear, this witness has considerable evidence on which to support a rational demarcation decision. The evidence is irrefutable that, (as described above) on a given date, Plaintiff was accosted by police, who ques-

tioned him about a series of burglaries. The question is whether or not sufficiently valid scientific support exists for the expert to render to the jury an opinion that that event triggered, or at least coincided with, a repression of Plaintiff's memory.

Perhaps to be equally clear, if Plaintiff elected not to reveal those events to anyone at that time, and over some more prolonged period forgot about the events, only to have his memory jogged at a point some 20 years later, then no repression of the memory, or dissociative amnesia, occurred.

Dr. Tavani, during the within *Daubert* hearing on that issue, testified that in her opinion the repression took place; that it did so long before two years post-event passed by; and that it occurred specifically at or about the time of Plaintiff's confrontation with the police, which she interpreted as a traumatic event.

Testifying in opposition to Dr. Tavani was an expert, Dr. Toborowski. His testimony provided little more than that, in his opinion, it is impossible to attribute any particular time to the repression. That may very well be about all that can be said from a scientific position. Hence, the analysis here will concern Dr. Tavani's offering.

The hearing progressed on the working assumption that, at the age of 14, Plaintiff was raped by Defendant. That assumption was for the purposes of this hearing only. As noted, the actuality of that would certainly be a contested matter at trial.

Additionally, I am aware that extensive psychological literature exists relative to the ability of the mind to form, or to "recall", events as memories as a result of their being suggested to someone, even though those events never actually occurred. That, also, is not a matter for consideration today.

Moreover, from impressions gleaned in the testimony, I presume that a memory could be repressed, could be recalled for some period, could be repressed again, and finally recalled again. If that understanding is correct, then a question in this case could arise as to whether a two-year period ever (at any one time or perhaps as accumulated) expired during which the memory was not repressed. Again, that was not the subject of this hearing.

Those related matters may well be of ultimate concern, but they are not part of this consideration.

To begin this analysis, we look to part of the testimony offered by Dr. Tavani. Memory, she described, is simultaneous to an event. The instant one does or experiences or thinks of something, a memory thereof is created. From that simultaneous instant, the action or experience or thought is a memory. It is then remembered past that instant, or else it is gone. Maybe it comes back. This is obviously and frequently evident with thought. One knows—or remembers—whatever it is at that time. An idea comes to mind. One either recalls it ten seconds or a minute later, or loses it, at least for the time being. That is a very recurring process.

In any event, the initial memory or awareness of the act, experience or thought is simultaneous with its occurring. Then that thought is either immediately gone (repressed, suppressed, blocked, forgotten or whatever) or it is retained. If it is retained, it stays with the individual until is forgotten, blocked, suppressed, repressed. Nothing stated in the Tavani testimony would suggest that there is anything controversial about that statement. Indeed, it would seem axiomatic.

Hence, given an event that is, for any particular duration, not recalled, several issues arise: was it repressed, or was it forgotten, blocked or suppressed? Are there distinctions among them? When did the initial, simultaneous recall end? When did it return? And (though, again, not for our purposes today) did it come and go more than once over a course of many years, and for what duration?

According to the testimony of Dr. Tavani's, which was, in fact confirmed by Dr. Toborowski, and which seems self-evident, no individual is able to say, for example: "I ceased recalling this event at 10:05 a.m. last Thursday," because, of course, then it would be recalled. Therefore, the timing of the loss of recall must, perforce, be determined—if it can be—by other means.

Among those means offered by Plaintiff is the evaluation by Dr. Tavani of the psychologically probable selection. Her testimony was based upon her own experience, her reference to DSM IV (TR-revised), and her reference to a variety of peer reviewed treatises (the *Mechanic* study; the *Dallinger* study; and others).

One difficulty that presents something of an undercurrent to any discussion of this or any reference to literature is that, to a very large extent, the witness' experience and all cited materials pertain to *treating* someone who has sustained dissociative amnesia *rather than determining its onset or duration* (which is seldom of much consequence to the therapist). Hence, empirical examples of good practices in treatment are not terribly relevant to this consideration. Thus, while they frequently make somewhat incidental observations related to the timing of the loss of recall, the focus of their analysis is directed elsewhere.

Be that as it may, Dr. Tavani opined as to her view on the "likelihood" of the commencement of the loss of recall. Her testimony was that, by reasonable psychological probability, the loss of recall was "quick," which was said to mean within

days, certainly weeks, of the event. This, she said, was the experience of "most people." From that background, although it had been established that knowledge of the point of recall loss is impossible for anyone to determine for himself or herself, Dr. Tavani extrapolated that Plaintiff's loss was within a few days of the event. She then testified as to the frequency with which a loss would be triggered by an event marked by stress or fear or a similar experience. In this case, she stated, there was the confrontation with the police.

The point then arose as to why Plaintiff wouldn't have mentioned such abuse when presented with the opportunity to do so immediately, and then later, while still in custody, during a psychological examination when he was specifically asked about abuse. Dr. Tavani believed that the memory had at that juncture been *suppressed.* Plaintiff would have had good reason to mention that to both the police and the psychologist if he had the memory, because he was "terrified" of going to Ferris School. Mentioning that event might well, Dr. Tavani testified, have aided his avoidance of Ferris. "He had nothing to gain by not mentioning it." Thus, Dr. Tavani stressed that she considered that confrontation to be the (or, at least, a) principle reason to believe it was dissociative amnesia.

When asked, though: "what if he thought the word of this event might, in some distorted fashion, get back to those already at the school, branding him for further abuse, thereby inclining him to avoid bringing it up," Dr. Tavani recognized that as an alternate motivation.

Other issues arose. In Dr. Tavani's original affidavit, she never rendered any opinion concerning the timing of any repression. She explained that she was unaware of any such issue, and had no cause to address it. She did, however, address it at her deposition. Yet, even then, she indicated that *nothing had been published* on the topic of repression on-set timing. Only later, she testified, did she locate material. As mentioned earlier, she stated that the on-set location is not "clinically relevant" for treatment. Still, she testified, "the mainstream of thought" is that on-set is quick. That phrase would appear to be inimical to the testing and peer review requirements of *Daubert* discussed below.

Question was made regarding the referenced studies; the later-discovered other material. For example, distinctions were drawn between dissociative symptoms and dissociative amnesia. The *Dahlberg* essay seemed to stress repression of symptoms as opposed to repression of an entire traumatic event (or actual dissociative amnesia). In this case, there was little discussion of whether a repression of a given set of symptoms (eg: names of alleged perpetrators or address of events or potential witnesses or surrounding activities) would be enough to avoid the ramification of the statute of limitations. However, this is not an issue of the accuracy of details. This concerns the tolling of the statute of limitations. Hence, here this event in its entirely—which is quite a prolonged "event" (encompassing multiple days and different assaults)—would seem to be required as a *sine qua non.* The position of Dr. Tavani and the Plaintiff, having meals with Defendant, traveling from D.C. and back; being raped in two locations; working in the tobacco shop; the entire several days of involvement; all constitute "an event" the entirely of which was lost by confrontation with the police. Then, upon psychiatric delving more than 20 years later, all of the events were recovered as a prolonged episode.

As mentioned, distinctions are drawn among merely forgetting an event, inten-

tionally blocking an event from one's recall, and repression of an event (typically as a result of a traumatic incident—here determined to be the confrontation with the police). Plaintiff, at least for the purposes of this consideration, recognizes those distinctions, accepting that if he "merely" forgot or blocked the event, the statute would not toll. He would be barred from pursuing his claim. Dr. Tavani, likewise, recognized those distinctions and ramifications. Unfortunately, during the course of her testimony she interchanged "forgotten" and "repressed" on several occasions. That, to some extent, underscored the importance to treating therapists of treating the patient who has, for one reason or another, in one context or another, generated in his available mindset a traumatic episode. That is to say: a patient now believes that, in his past, he sustained a traumatic event; he doesn't know how to deal with it; a psychiatrist or psychologist is retained to help him work through the concept in his mind. Exactly at what point, the idea ceased being in the patients' consciousness is not the concern. As a result, little is—or, according to some, including Dr. Toborowski, ever could be—understood about the timing of repression or forgetting or blocking. On the other hand, that is the one thing that is critical to this entire question.

Therefore, while Dr. Tavani certainly has credentials permitting her to testify as to how to deal with and threat people who have repressed memory or dissociative amnesia, that expertise does not address the question under examination.

■ As this is all viewed in the contexts of *Daubert* and *Bowen v. E.I. DuPont de Nemours & Co.*,[3] we look to the standards that must be met.[4] Relative to *Daubert:*

One: has the theory been tested? While substantial analysis exists relative to the validity of the concept of dissociative amnesia, analysis of the ability to time its onset is largely tangential and non-specific. "Frequently" at least "some symptoms" appear "quickly" is not the same thing as "repression occurs within three weeks."

Two: has the theory been peer reviewed? Much of the discussion pivoted on DSM, which is not a peer reviewed publication. The peer reviewed publications brought to light fall into the same category described under the first factor.

Three: are there measurable standards and error rates extent? While this is a concept that does not easily play into our consideration, the fact is that nothing of the sort exists here.

Four: does the theory enjoy general acceptance in the scientific community? The theory of dissociative amnesia may be said to. The concept of designation of its inception does not appear to be at that point.

■ Concerning *Bowen:* One: is the witness qualified? Certainly as someone treating a patient who is subject to dissociative amnesia, Dr. Tavani would be qualified. The question lingers, though, as to whether she or anyone else is qualified to testify as to its on-set.

Two: is the evidence relevant? Clearly, it is.

Three: is the expert's opinion based on information reasonably relied upon by experts in her field? This is, essentially, the same consideration discussed above under "*Daubert* Four". As indicated, it is not.

3. *Bowen v. E.I. DuPont de Nemours & Co.,* 906 A.2d 787 (Del.2006).

4. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Four: would the testimony assist the time of fact? It probably would, but that assistance would be subject to criterion five.

Five: will the testimony create unfair prejudice? Because the testimony would be emanating from a person so well-credentialed in her field, the jury could easily be misled into over-emphasing anything she opined concerning a particular issue, when that issue is, in fact, so unreliably established in the scientific community.

In sum, the gatekeeping function, so critical to the determination of the admissibility of particular expert testimony, prevents the testimony of Dr. Tavani on the timing of the on-set of Plaintiff's dissociative amnesia or repressed memory.

The determination that, to a medical probability (which is the standard required, of course) most (not all, but more than half) of the people, who sustain some degree, (maybe of only some symptoms; perhaps completely) of dissociative amnesia, experience it "quickly" can be offered by a witness testifying to a jury as an expert that an experience (the police confrontation) of this Plaintiff at some point which was before two years had expired cannot be sustained. Permitting its expression would violate the minimum requirements of expert testimony. Among the legal requirements for such expert testimony, pursuant to *Daubert* and progeny, the testimony must satisfy minimal standards, which this does not.

Accordingly, Plaintiff will not be permitted to educe any testimony from Dr. Tavani bearing on the subject of when Plaintiff's loss of memory of the alleged events took place or began. Defendant's Motion for an Order precluding any such testimony from Dr. Tavani is **SUSTAINED.**

**SO ORDERED.**